UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARION BINAY, JOSELITO BINAY,
and SEAN BINAY,

      Plaintiffs,

v.

DOWNRIVER AREA NARCOTICS
ORGANIZATION a/k/a DRANO, LT. MENNA,
OFFICER JONES, OFFICER BETTENDORF,
OFFICER BROWN, and OFFICER PONGRACZ,

      Defendants.
_____/

Case No. 07-15160

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING DEFENDANT PONGRACZ' MOTION FOR SUMMARY JUDGMENT

**I.    Introduction**

Plaintiffs have brought suit against Defendants Downriver Area Narcotics Division ("DRANO"), Lt. Menna, and Officers Jones, Bettendorf, Brown and Pongracz, alleging violation of 42 U.S.C. § 1983 as well as various Michigan state law violations. Defendant Pongracz has filed a motion for summary judgment. Plaintiffs filed a response, and Defendant filed a reply. Pursuant to E.D.Mich. Local Rule 7.1, the Court will decide Pongracz' motion without oral argument.

**II.    Facts**

At the time of the incident at issue, Plaintiffs, Marion Binay, Joselito Binay, and their son, Sean Binay, resided in an apartment in Southgate, Michigan. Neither Mr. nor Mrs. Binay have a criminal record.

During the Binays' residence at the apartment, Defendant Pongracz, a member of DRANO, received an anonymous call indicating that narcotic trafficking was taking place at Plaintiffs' apartment. On December 13, 2006 and on January 9, 2007, several DRANO officers, a canine handler from the Southgate Police Department, and his dog, Apollo, went to the apartment, at which time Apollo indicated positive for narcotics on the outside of the door to Plaintiffs' apartment. Apollo is a full service canine unit certified in narcotics detection. The officers gained entry to the common area of the apartment by using a key that the building's management provided to Pongracz specifically for conducting narcotic investigations. At the time of Apollo's two positive indications of narcotics on Plaintiffs' door, Apollo also sniffed the other apartment doors and a couple of storage doors. He only made a positive indication on the entry door to Plaintiffs' residence.

Based on the two positive dog indications, and the anonymous call, Defendant Pongracz determined that he had probable cause to seek a search warrant, and informed Lt. Menna that he wanted to prepare the warrant. On January 9, 2007, Pongracz' affidavit was reviewed and authorized by Assistant Prosecuting Attorney Sarah De Young, and subsequently signed by Judge James A. Kandrevas of the 28th District Court.

The following paragraphs were contained among the statements in Pongracz' affidavit for the search warrant:

> **B.      The FACTS establishing cause or the grounds for search are:**
>
> ¶1.   The Affiant is a certified police officer. . . and has received narcotics investigation training. . . Based on affiant's experience, it is common for those who traffic in controlled substances to secure illegally obtained assets in numerous bank accounts, safe deposit boxes, certificates of deposit and other financial instruments to avoid detection . . .
>
> ¶2.   Further, affiant has been involved with the execution of numerous search warrants and in many instances people who traffic narcotics frequently use their garages

and/or outbuildings for storage and/or concealment of their narcotics. Often time's [sic] people who traffic and/or use narcotics attempt to conceal narcotics, weapons, and/or proceeds in their pockets or elsewhere on their persons. Further, all information in this affidavit was obtained either through the affiant's personal investigation, training or experience, or from officers of the DRANO unit.

¶3.   Further, through affiant's prior experience and knowledge, it is common for people to hide assets and proceeds from illegal drug sales and to conceal them in places such as safe deposit boxes and storage units.

¶4.   Further, through Affiant's prior experience it is common for drug traffickers to store illegal drugs, weapons and proceeds in motor vehicles. Also, traffickers use these vehicles as a mode of transportation for delivery of illegal drugs.

¶5.   Further, Affiant received anonymous information reference to narcotics trafficking at the Fountain Park North Apartments specificly [sic] from 11320 Burlington Apt. 460, Southgate MI. 48195.

¶7.   Further, on 12/13/06 Affiant, Det. Jones, Det. Nowak and Southgate K-9 officer Tim Demers proceeded to 11320 Burlington Apt. 460, Southgate MI. 48195. At that time K-9 officer Tim Demers took his dog, Apollo to the Apartment door at 11320 Burlington Apt. 460, Southgate MI. 48195 at which time Apollo indicated positive for narcotics on the door.

¶8.   Further, on 01/09/07 Affiant, Det. Jones, Det. Bettendorf and Southgate K-9 officer Tim Demers proceeded to 11320 Burlington Apt. 460, Southgate MI. 48195. At that time K-9 officer Tim Demers took his dog, Apollo to the Apartment door at 11320 Burlington Apt. 460, Southgate MI. 48195 at which time Apollo indicated positive for narcotics on the door.

¶9.   Further, Southgate K-9 officer Tim Demers and his dog Apollo have been together for 2 year. Apollo is a 3 year old German Shepherd and has been certified through the International Association of Professional K-9 handlers for the past 2 years. Apollo is a full service narcotic detection dog.

. . .

Dft. Exh. B.

The search warrant was executed on January 10, 2007 by a DRANO search team. No evidence of narcotics trafficking was found. The search team removed a WOW cable bill from the apartment.

In describing the execution of the search warrant, Plaintiffs state that at approximately 9:00 pm, six masked men knocked down the door to their apartment. The men entered the apartment, brandishing weapons, and forced Mr. And Mrs. Binay to the floor. They further state that guns were pointed at them, they were instructed not to look at the masked men, and that they were not told the reason why the men were there. The Binays state that they were handcuffed, their apartment was ransacked, and the door to the room that their son was in was kicked in. They were then interrogated, and a canine unit was brought into their apartment. The officers left after about an hour, leaving them without a front door to their apartment. The search by Apollo and the other members of DRANO did not reveal any narcotics.

### III.   Standard of Review

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

**IV.     Analysis**

Plaintiffs filed the instant lawsuit in Wayne County Circuit Court.  It was removed to this Court.  Plaintiffs' Complaint alleges state tort claims of false arrest, false imprisonment and assault and battery, as well as federal and state constitutional violations.  On February 26, 2008, the Court dismissed Plaintiffs' state constitutional claims.  Plaintiffs' state tort claims and federal constitutional claims remain before the Court.

In his motion, Defendant argues that Plaintiffs have failed to establish any federal or state constitutional violations.  Defendant argues that because he relied on a judicially secured search warrant, and Plaintiffs' own testimony establishes that no excessive force was used during the search, summary judgment must be granted on Plaintiffs' constitutional claims.

**A.     Plaintiffs' Federal Claims**

First, Defendant argues that Plaintiffs have failed to state a valid fourth amendment claim based on their detention during the execution of the search warrant.  In support of this argument, Defendant states that, because the search warrant was based on probable cause, Plaintiffs' fourth amendment rights were not violated.  In the context of a search warrant, "probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" United States v. Lattner, 385 F.3d 947, 951 (6th Cir. 2004).  "In reviewing the sufficiency of a search warrant affidavit, the 'magistrate's determination of probable cause is afforded great deference,' and should only be reversed if arbitrarily made." Id.

Here, the magistrate's determination of probable cause was based upon Defendant's affidavit in support of such finding.  Defendant stated in his affidavit that Apollo had indicated positive on two separate occasions for the presence of narcotics on Plaintiffs' door.  Defendant

further stated that Apollo is certified to detect narcotics.  A canine sniff by a reliable, certified canine unit is sufficient to constitute probable cause.  United States v. Diaz, 25 F.3d 392, 293 (6th Cir. 1994)("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance.").

Plaintiffs make much of the fact that Defendant did not conduct additional surveillance activities, such as trash pulls, after the two positive indications by Apollo.  However, as stated above, a positive indication by a properly trained dog is sufficient to establish probable cause.  Once a police officer possesses facts sufficient to establish probable cause, the officer need not conduct any further investigation.  Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988).

In addition, Plaintiffs argue that Defendant's affidavit served to mislead the magistrate in the issuance of the search warrant.  Plaintiffs point to paragraphs 1-4 of Defendant's affidavit in support of their argument that much of the affidavit was wholly without merit, in that it did not apply to Plaintiffs, but was designed to influence the magistrate to issue a search warrant.  The Court finds this argument unpersuasive.  The subject paragraphs are clear that their purpose is to outline the affiant's experience in such matters.  In addition, the Court believes that the magistrate is capable of separating statements regarding the affiant's past experiences from those alleging facts specific to the matter at hand without being misled.

Here, the Court finds that sufficient evidence was contained in Defendant's affidavit to support the magistrate's determination of probable cause.  Accordingly, the Court will afford such finding its due deference, and will not reverse it.

Because the Court will not reverse the magistrate's finding, it must examine Plaintiffs' claims of false arrest and false imprisonment in the context of a properly secured search warrant that was based on probable cause.  In order to succeed on a Fourth Amendment claim of false

arrest or false imprisonment, Plaintiffs must prove that the police lacked probable cause.  Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002); Frantz v. Village of Bradford, 245 F.3d 869, 873 (6th Cir. 2000).  Plaintiffs can not make such a case, and these claims should therefore be dismissed.

However, the Court believes that the issue of whether Plaintiffs' detention was handled appropriately is a question of fact for the jurors. The Supreme Court has stated, "for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981).  In *Summers*, the Supreme Court explained that detention is permissible in the execution of a warrant, stating,

> [i]n assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. . . The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

Id., 452 U.S. at 702-703 (internal citations omitted).

However, the facts of the detention itself must still demonstrate that the manner in which the warrant was executed was reasonable.  The interrogation was conducted after the search of their apartment, which yielded no evidence of drug activity.  Thus, Plaintiffs argue, the subsequent interrogation while handcuffed and at gunpoint was excessive.   This is a question of fact for the jury.  Hill v. McIntyre, et al., 884 F.2d 271 (6th Cir. 1989)(holding that where Plaintiffs have raised a question of whether the manner in which a warrant was executed was reasonable, it is a question of fact for a jury whether officers were reasonable in breaking open a door; whether officers were reasonable in detaining occupant of building at gunpoint; and

whether the extensive nature of the search of the premises was reasonable).

### B. Plaintiffs' State Claims

Plaintiffs also make claims under state law of false arrest, false imprisonment and assault and battery.

"In order to prevail on a claim of false arrest or false imprisonment, the plaintiff must show that the arrest was not legal, i.e., that it was made without probable cause." Tope v. Howe, 179 Mich. App. 91, 105 (1989)(citing Lewis v. Farmer Jack Division, Inc., 415 Mich. 212, 218, n. 2, 327 N.W.2d 893 (1982); Young v. Barker, 158 Mich.App. 709, 720, 405 N.W.2d 395 (1987)). Here, as discussed above, the Court will not reverse the magistrate's finding of probable cause. Accordingly, because Plaintiffs can not demonstrate the absence of probable cause, they can not prevail on their claims of false arrest or false imprisonment.

Regarding Plaintiffs' assault and battery claims, while state law allows officers to utilize force to effectuate an arrest and to execute a search warrant, there is a question of fact regarding the necessity of the continued use of weapons and handcuffs once it was determined that drugs were not on the premises. As discussed above regarding Plaintiffs' excessive force claim, the Court finds that whether Defendant engaged in assault and/or battery of Plaintiffs is a question of fact for the jury.

### V. Order

Accordingly,

IT IS ORDERED that Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment on Plaintiffs' federal Fourth Amendment unlawful search, false arrest and false imprisonment

claims is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment on Plaintiffs' federal excessive force claim is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment on Plaintiffs' state law claims of false arrest and false imprisonment is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment on Plaintiffs' state law claims of assault and battery is DENIED.


Date:   January 9, 2009                    s/Bernard A. Friedman_____
                                           HON. BERNARD A. FRIEDMAN
                                           UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins
Case Manager to Chief Judge Friedman